1  Dan Stormer, Esq. [S.B. # 101967]
2  Brian Olney, Esq. [S.B. #298089]
   HADSELL STORMER RENICK & DAI LLP
3  128 N. Fair Oaks Avenue
   Pasadena, California 91103
4  Telephone: (626) 585-9600
   Facsimile: (626) 577-7079
5  Emails: dstormer@hadsellstormer.com
           bolney@hadsellstormer.com
6
   Attorneys for Plaintiff
7  OSCAR CORONA

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| OSCAR CORONA, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES:** |
| v. | 1. 42 U.S.C. **§** 1983, 4th and 14th Amendments: Unreasonable Seizure |
| CITY OF FONTANA; CHIEF WILLIAM GREEN; OFFICER J. GREGG; LIEUTENANT KRAUT; and DOES 1-10. | 2. 42 U.S.C. **§** 1983, 4th and 14th Amendments: Unreasonable Search |
| Defendants. | 3. 42 U.S.C. **§** 1983, 4th and 14th Amendments: Excessive Force |
| | 4. 42 U.S.C. **§** 1983, 4th and 14th Amendments: Failure to Intervene |
| | 5. Bane Act, Civil Code **§** 52.1 |
| | 6. Assault |
| | 7. Battery By Peace Officer |
| | 8. Intentional Infliction of Emotional Distress |
| | 9. Negligence |
| | **[DEMAND FOR JURY TRIAL]** |

COMPLAINT FOR DAMAGES

## I.     INTRODUCTION AND VENUE

1.     On January 29, 2021, at least seven officers with the Fontana Police Department ("FPD") pulled Oscar Corona over near the intersection of San Bernardino Avenue and Live Oak Avenue, held him at gunpoint, forced him onto his knees, handcuffed him, and held him in a lengthy detention in a police car, where he suffered a panic attack.  Mr. Corona was driving his truck to return a trailer he had rented from U-Haul Moving & Storage at Foothill Blvd. (716066) the previous day.  The Officers conducted a "high risk" stop pursuant to FPD's unconstitutional policy requiring and/or permitting this highly dangerous and invasive procedure based only upon suspicion of a stolen vehicle, a suspected property crime that is not high risk.  Throughout this entire incident, Mr. Corona followed all police orders and did nothing to indicate that he posed any threat.

2.     Only after detaining Mr. Corona for a lengthy period of time did the officers finally tell him that they had made a mistake and pulled him over believing that the U-Haul was stolen but had spoken with U-Haul and confirmed that it was not.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  Plaintiff's state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the United State District Court of the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) as the Central District is "a judicial district in which any defendant resides" and "all defendants are residents of the State in which the district is located."  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2), as the Central District is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

///

COMPLAINT FOR DAMAGES                    -1-

### III.   PARTIES

5.      Plaintiff Oscar Corona resides in Upland, California.  Mr. Corona was driving his truck with an affixed rented U-Haul trailer when FPD officers pulled him over and conducted a "high risk" stop in which they drew their weapons, held him at gunpoint, forced him onto his knees, violently handcuffed him, and held him in a lengthy detention in a police car while they searched his truck without his consent.

6.      Defendant City of Fontana ("the City") was and is a legal political entity established under the laws of the State of California, with all the powers specified and necessarily implied by the Constitution and laws of the State of California and exercised by a duly elected City Council and/or their agents and officers.  The City is responsible for the actions, inactions, policies, procedures, practices and customs of the FPD and its agents and employees. At all relevant times, the City was and continues to be responsible for assuring that the actions of the FPD and its agents and employees comply with the Constitutions of the State of California and of the United States and any other applicable laws and regulations.

7.      Defendant William Green is the duly appointed Chief of Police for the FPD, and an employee of the City.  Defendant Green holds the highest position in the FPD and is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all FPD employees and/or agents.  At all relevant times herein, Defendant Green was responsible for the promulgation of the policies and procedures and allowances of the practices and customs pursuant to which the acts of the Defendant Officers alleged herein were committed.  Defendant Green is being sued in both his individual and official capacities for the purpose of ensuring Plaintiff may obtain complete and effective relief as against the FPD, whose actions and conduct are under the control of the current Chief of Police.  On information and belief, Fontana Police Chief William Green established and/or permitted the FPD's policy, practice, custom, and failure to train, and/or ratified the acts alleged herein.

8.      Defendant Officer J. Gregg (#1313) is an employee of the FPD who,

COMPLAINT FOR DAMAGES                    -2-

among other things, pulled over Mr. Corona without probable cause, participated in the high risk stop, subjected Mr. Corona to a *de facto* arrest and lengthy detention without justification, and wrote the vehicle report describing the incident.

9.    Defendant Police Lieutenant Kraut is an employee of the FPD who, among other things, pulled over Mr. Corona without probable cause, participated in the high risk stop, and subjected Mr. Corona to a *de facto* arrest and lengthy detention without justification.

10.    Claimant is currently unaware of the identities of the other involved officers.  Defendant Officers DOES 1-10 are employees of the FPD who were present for and participated in the incident.  Among other things, Defendant Officer DOES participated in the high risk stop of Mr. Corona and his *de facto* arrest without probable cause, held Mr. Corona at gunpoint, ordered him onto his knees, violently handcuffed him, detained him, searched his truck without consent, and/or stood guard with the other Officer Defendants while they committed these acts.

11.    Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 (collectively the "Officer Defendants") engaged in the acts or omissions alleged herein under color of state law and within the course and scope of their duties as Officers of the FPD.  The Officer Defendants were acting with the complete authority and ratification of their principal, Defendants City of Fontana and Defendant Chief William Green.

12.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein, Defendants and each of them were the agents, employees, servants, joint venturers, partners, and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

13.    All of the acts and omissions complained of herein by Plaintiff against Defendants were done and performed by said Defendants by and through their authorized agents, servants and/or employees, all of whom at all relevant times herein

COMPLAINT FOR DAMAGES          -3-

were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Plaintiff alleges that to the extent certain acts and omissions were perpetrated by certain Defendants, the remaining Defendant or Defendants confirmed and ratified said acts and omissions.

14.     Plaintiff is informed and believes and thereupon alleges, that at all times material herein, each Defendant was dominated and controlled by his/her co-Defendant and each was the alter-ego of the other.

15.     Whenever and wherever reference is made in this complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly and severally.

## IV.    ADMINSITRATIVE PEREQUISITES

16.     Plaintiff Oscar Corona exhausted his administrative remedies by filing a governmental tort claim with the City of Fontana on June 21, 2021.  By correspondence dated July 12, 2021, the City rejected Plaintiff's governmental tort claim.

## V.    FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17.     On January 28, 2021, Mr. Corona was helping his adult children prepare for his granddaughter's first birthday party at his daughter's home in San Bernadino.  In order to clear space for the party, Mr. Corona rented a U-Haul trailer to transport a large playhouse away from his daughter's home.  Mr. Corona rented the U-Haul trailer from U-Haul Moving & Storage at Foothill Blvd. (716066) at 16823 Foothill Blvd. in Fontana, California 92335 and U-Haul employees attached a trailer to Mr. Corona's Ford F-250 pickup truck.  Unbeknownst to Mr. Corona, the U-Haul employees attached a trailer to Mr. Corona's truck that U-Haul had reported as stolen and/or embezzled.  Even though the trailer was back in U-Haul's possession at the time of Mr. Corona's rental, U-Haul had not reported it as recovered.

18.     Later that same day, Mr. Corona drove with the U-Haul trailer in tow to his daughter's house to pick up the playhouse.  Once he arrived, however, he realized that

the playhouse would not fit in the U-Haul trailer.  That evening, Mr. Corona drove the trailer back to his house in Upland and parked it there overnight.

19.    On January 29, Mr. Corona drove his truck with the U-Haul trailer affixed back toward the U-Haul rental site in Fontana to return the trailer.  While Mr. Corona was driving on Live Oak Avenue, he noticed in his rear-view mirror that several police cars were behind him.

20.    Mr. Corona wondered what was going to happen to whomever the police were pursuing.  Mr. Corona was not speeding, changing lanes without signaling, or taking any actions that suggested he might pose any threat.  He had no idea that the police were actually pursuing him.

21.    Mr. Corona put on his turn signal and made a right onto San Bernadino Avenue to let the police cars pass.  He saw the police vehicle lights turn on, heard the sound of a police siren, and saw the police cars turn right onto San Bernardino Avenue. Mr. Corona then heard a police officer direct him over loudspeaker to turn into the parking lot.  Mr. Corona obeyed this order and turned into the liquor store parking lot at the corner of San Bernardino Avenue and Live Oak Avenue.

22.    On information and belief, the Defendant Officers received information from the California Law Enforcement Telecommunications System ("CLETS"), which includes the Stolen Vehicle System ("SVS"), indicating that the U-Haul trailer attached to Mr. Corona's truck might be stolen.  Without any further reasonable suspicion beyond the information from CLETS indicating that the trailer might be stolen, and without any probable cause to believe that Mr. Corona was involved in any criminal activity, let alone criminal activity posing any high risk of danger, Defendant Officers conducted a highly invasive and terrifying "high risk" traffic stop.

23.    The Fourth Amendment to the United States Constitution prohibits unreasonable seizures.  U.S. Const. amend. IV; *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996).  Article I, § 13 of the California Constitution provides a similar prohibition.  Cal. Const. Art. I, § 13; *see People v. Perry*, 36 Cal. App. 5th 444, 466

1     (2019).

2           24.    "Under settled Fourth Amendment law, a traffic stop constitutes a seizure,

3     and an officer must have reasonable suspicion before detaining a motorist." *Bingham v.*

4     *City of Manhattan Beach*, 341 F.3d 939, 946 (9th Cir. 2003).  To lawfully arrest a

5     motorist, however, an officer must have probable cause.  *Green v. City & County of San*

6     *Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014).

7           25.    Under Ninth Circuit law, "high risk" vehicle stops in which multiple

8     officers hold a person at gunpoint, force the person down onto their knees, and handcuff

9     the person constitute a *de facto* arrest requiring probable cause.  *See id.* at 1047.

10          26.    Ninth Circuit law thus limits the use of such "high risk" detentions only to

11    "special circumstances" "1) where the suspect is uncooperative or takes action at the

12    scene that raises a reasonable possibility of danger or flight; 2) where the police have

13    information that the suspect is currently armed; 3) where the stop closely follows a

14    violent crime; and 4) where the police have information that a crime that may involve

15    violence is about to occur." *Id.*  None of these special circumstances was present here.

16          27.    Police officers in California use CLETS to determine whether a particular

17    vehicle has been reported as stolen.  Police officers in Fontana and throughout

18    California have been expressly warned that information in CLETS identifying a vehicle

19    as stolen is not sufficient to establish probable cause:

20          Information obtained from CLETS can be used by peace officers to establish or
21          reinforce the *reasonable suspicion* necessary to *lawfully detain a suspect*.
            Because the information may be unreliable or unsubstantiated, however, *it is not*
22          *sufficient **alone*** for establishing the probable cause necessary for law
            enforcement actions such as conducting a search, seizing property, or placing an
23          individual under arrest.

24    California Commission on Peace Officer Standards and Training (POST), Learning

25    Domain 36 (Information Systems), Version 3.6, at 1-9 (emphasis in original).  For this

26    reason, California Department of Justice regulations *require* that officers "obtain

27    confirmation before an arrest or the confiscation of the property in response to the

28    computer match." *Id.*  Officers are also trained that "[t]he use of unreliable or

unsubstantiated information by an officer when establishing probable cause could lead to unlawful searches or seizures as well as incidents of false arrest." *Id.*

28. The involved Officers' highly aggressive tactics were pursuant to the FPD's policy and training to use such so-called "high risk" or "felony" traffic stop procedures based only upon suspicion of a stolen vehicle. The City admitted in its July 12, 2021, letter denying Mr. Corona's Government Tort Claim that "[a] review of the police reports, interviews, and CAD call card revealed that the involved officers involved in your matter acted in a manner consistent with their training" and that "neither did they violate any departmental policies or procedures."

29. The Fontana Police Department's high risk traffic stop policy violates the Fourth Amendment and Article I, § 13 of the California Constitution. The involved officers, acting pursuant to Departmental policy and training, performed a high risk stop on Mr. Corona based only on a report in CLETS indicating only that the U-Haul trailer attached to Mr. Corona's truck had been reported stolen. Before verifying whether this report was correct, at least seven officers surrounded Mr. Corona and used the "especially intrusive" tactics of drawing and pointing firearms, forcing Mr. Corona down onto his knees, handcuffing him, and detaining him in the back of a police car even though none of the "special circumstances" required to justify such aggressive tactics were present. Significantly, the Fontana Police Department's written policy on high risk stops does not mention the need for such "special circumstances" at all. Whether the Fontana Police Department's policy requires or even simply permits the use of such tactics based only upon suspicion of a stolen vehicle, the policy is unconstitutional.

30. While Mr. Corona sat in his truck in the liquor store parking lot, one police car pulled in front of him and approximately four police cars pulled up behind him. The officers got out of their cars, drew their firearms, and pointed them at Mr. Corona. Defendant Officers ordered Mr. Corona to turn off his truck and throw his keys out of the truck. Mr. Corona was terrified. He rolled down his window and threw his keys out

of the open window.  Defendant Officers directed Mr. Corona to put his right hand where they could see it, and ordered him to exit the truck slowly and put his hands in the air.  Mr. Corona complied with these commands.

31.     After Mr. Corona opened the truck door and dismounted from his truck, he saw that at least seven officers were standing outside their vehicles, many with their guns drawn and pointed at him.  Mr. Corona felt panicked and terrified.

32.     Defendant Officers standing behind Mr. Corona's truck directed him to walk backwards towards them with him hands in the air.  Mr. Corona complied with this demand.  He felt terrified that any one of the officers might start shooting at him. He thought that if one officer shot at him, all of the officers would start shooting at him and would surely kill him.  He wondered if he would ever see his children again.

33.     After Mr. Corona had walked backwards away from his truck, the Defendant Officers ordered him to stop, get down on his knees, and put his hands on his head.  Mr. Corona had suffered a prior knee injury and told the Officers words to the effect that he could not kneel because his knees were hurt.  The Defendant Officers yelled again to Mr. Corona to get down on his knees.  Terrified for his life, Mr. Corona complied with the Officers' orders.  As he knelt down, he heard a cracking noise from his right knee.  Mr. Corona knelt on the ground and placed his hands on his head. While he was kneeling, he started shaking due to the intense pain that he felt in his knees while kneeling on the asphalt.

34.     Several officers approached Mr. Corona, handcuffed him, and told him to stand up.  Mr. Corona said that he could not stand up because his knees were hurt and asked the officers to help him stand up.  Two officers grabbed Mr. Corona's arms and lifted him back onto his feet.  The handcuffs were so tight on Mr. Corona's wrists that his hands went numb.  An officer then walked Mr. Corona over to a police car and told him to sit in the back seat.  Mr. Corona sat on the backseat but due to his knee injury was unable to pull his feet into the car.  Mr. Corona asked the officer to please help him put his feet into the car.  The officer used his foot to push Mr. Corona's feet into the car

and closed the door.  Mr. Corona felt painfully cramped in the back seat.  Mr. Corona saw the officers searching the inside of his truck.

35.     At the time of the stop, Mr. Corona was wearing a beanie hat with strings tied at the bottom of his chin.  During the handcuffing and detention process, Mr. Corona's beanie hat slid to the back of his head so that the tied strings started pulling at the front of his throat.  While he sat handcuffed in the police car, Mr. Corona had a panic attack and began screaming for help, said he could not breathe, and kicked the door to get the officers' attention.  No officer approached Mr. Corona to help him or even to check whether anything was wrong.

36.     After sitting handcuffed in the police vehicle for what felt to Mr. Corona like a considerable period of time, a police officer approached Mr. Corona and told him that the officers had made a mistake and thought he had been driving a stolen U-Haul trailer.  Defendant Lieutenant Kraut walked up to Mr. Corona holding the U-Haul contract that the officers had taken from inside of Mr. Corona's truck.  Defendant Kraut said that the number on the contract did not match the number on the trailer attached to his truck and that U-Haul's employees had attached a trailer to Mr. Corona's truck that it had reported as stolen.  Defendant Kraut said that an officer would follow Mr. Corona back to U-Haul so that Mr. Corona would not get pulled over again on his way to return the trailer.

37.     Defendant Kraut asked another officer to follow Mr. Corona to the U-Haul office.  Mr. Corona stayed inside his truck while the officer went into the U-Haul office to speak with the U-Haul employees.  After a while, the officer exited the U-Haul office, waved to Mr. Corona, and left.

38.     Mr. Corona continues to suffer severe physical, emotional, and mental health injuries as a result of the traffic stop.  Among other injuries, Mr. Corona continues to suffer from trouble sleeping, insomnia, anxiety attacks, and crying as a result of this traffic stop.

39.     Plaintiff brings this action for damages against Defendants for general,

compensatory, and statutory damages, costs and attorneys' fees based on Defendants' unlawful and egregious conduct, as alleged herein.  Plaintiff also seek declaratory and injunctive relief enjoining the FPD's policy requiring, or in the alternative authorizing, "high risk" stops prohibited by Ninth Circuit law.  Additionally, Plaintiff seeks punitive damages against the individual Defendants.

**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Unreasonable Seizure**

**(By Plaintiff Against All Defendants)**

40.     Plaintiff alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

41.     All of the acts of Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 were done under color of state law.

42.     The acts of the Officer Defendants deprived Plaintiff of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, unlawfully seizing Plaintiff by conducting a high risk traffic stop and a *de facto* arrest of Plaintiff without any lawful basis, probable cause, warrant, or any exception thereto.

43.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Plaintiff's constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to and did conduct a "high risk" stop of Plaintiff without any further reasonable suspicion beyond the information from CLETS indicating that the U-Haul trailer might be stolen, and without any probable cause to believe that Mr. Corona was involved in any criminal activity, let alone criminal activity posing any high risk of danger, and performed a *de facto* arrest of Mr. Corona without probable cause, held him at gunpoint, ordered him onto his

knees, violently handcuffed him, detained him, and/or stood guard while the other Officer Defendants committed these acts.  None of the involved Officers objected to these violations of Plaintiff's rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the unlawful seizure and *de facto* arrest of Plaintiff and the use of unreasonable force against him.

44.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

45.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

46.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Fontana.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars and officers; drawing their weapons and pointing firearms at people; forcing people onto their knees; handcuffing them; and detaining them at length, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

47.     The training policies of the City of Fontana were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to performing (1) high risk traffic stops of vehicles suspected of being stolen based only upon unconfirmed CLETS data and (2) *de facto* arrests of motorists based only upon same.  The City of Fontana knew that its

failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Mr. Corona of his rights. The City of Fontana was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

48.    Defendant City of Fontana's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Mr. Corona by Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10, and the other involved Officers; that is, the City of Fontana's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused his injuries. These policies, longstanding practices, and/or customs include performing high risk traffic stops of vehicles suspected of being stolen.

49.    FPD Chief William Green, a final policymaker for the City of Fontana, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions. Upon information and belief, the City took no action in response to Plaintiff's allegations and none of the involved Officers have been disciplined.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Unreasonable Search

### (By Plaintiff Against All Defendants)

50.    Mr. Corona realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

51.    All of the acts of Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 were done under color of state law.

52.    The acts of the Officer Defendants deprived Mr. Corona of rights, privileges, and immunities secured by the Constitution and laws of the United States,

including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, by, among other things, searching Mr. Corona's truck and U-Haul trailer he had rented without a warrant, exigency, emergency, probable cause, or Plaintiff's consent.

53.     Each of the Officer Defendants was both personally involved and an integral participant in the violation of Mr. Corona's constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to search and did search Mr. Corona's truck and U-Haul trailer; did not object to this violation of Mr. Corona's rights; and participated in the violation by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, search, and use of unreasonable force against Plaintiff.

54.     As a direct and proximate result of the aforementioned acts of the Officer Defendants, Plaintiff sustained and incurred damages including emotional injury.

55.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

56.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Fontana.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and pointing firearms at people, forcing people onto their knees, handcuffing them, detaining them at length, and searching their vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles

1    and without regard to Ninth Circuit law.

2        57.    The training policies of the City of Fontana were not adequate to train,

3    supervise, and control its Officers to handle the usual and recurring situations with

4    which they must deal, including but not limited to performing high risk traffic stops of

5    vehicles suspected of being stolen based only upon unconfirmed CLETS data and

6    searching the vehicle based only upon same.  The City of Fontana knew that its failure

7    to adequately train its Officers for such situations made it highly predictable that its

8    Officers would engage in conduct that would deprive persons such as Plaintiff of his

9    rights.  The City of Fontana was thus deliberately indifferent to the obvious

10   consequences of its failure to train its Officers adequately.

11       58.    Defendant City of Fontana's official policies and/or longstanding practices

12   or customs, including but not limited to its training policies, caused the deprivation of

13   the constitutional rights of Plaintiff by the Officer Defendants and the other involved

14   Officers; that is, the City of Fontana's official policies and/or longstanding practices or

15   customs are so closely related to the deprivation of Plaintiff's rights as to be the moving

16   force that caused his injuries.

17       59.    FPD Chief William Green, a final policymaker for the City of Fontana,

18   ratified the actions and omissions of the Officer Defendants and the other involved

19   Officers in that he had knowledge of and made a deliberate choice to approve their

20   unlawful acts and omissions.  Upon information and belief, the City took no action in

21   response to Plaintiff's allegations and none of the involved Officers have been

22   disciplined.

### THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983

### Fourth and Fourteenth Amendments: Excessive Force

### (By Plaintiff Against All Defendants)

27       60.    Mr. Corona realleges and incorporates by reference each and every

28   allegation contained in the foregoing paragraphs as though fully set forth herein.

COMPLAINT FOR DAMAGES          -14-

61.    All of the acts of Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 were done under color of state law.

62.    The acts of the Officer Defendants deprived Plaintiff of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, using excessive force against Plaintiff. Specifically, Defendants pointed their guns at Plaintiff, which under established Ninth Circuit law is a use of force.  Defendants also forced Plaintiff to kneel in the middle of the street notwithstanding his injured knees, and applied handcuffs so tightly that Plaintiff's hands became numb.

63.    Each of the Officer Defendants was both personally involved and an integral participant in the violation of Plaintiff's constitutional rights.  Each Officer was aware of the unlawful actions of the other Officers as they planned to and did point their firearms at Plaintiff, forced Plaintiff to kneel in the middle of the street, and forcefully handcuffed Plaintiff.  None of the Officers objected to these violations of Plaintiff's rights, and each Officer participated in the violation by performing police functions, including meaningful participation in the unlawful traffic stop, *de facto* arrest, and use of unreasonable force against Plaintiff.

64.    As a direct and proximate result of the aforementioned acts of the Officer Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

65.    In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

COMPLAINT FOR DAMAGES                    -15-

66.    The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Fontana.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops involving excessive force, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and pointing firearms at people, forcing people onto their knees, tightly handcuffing them, and detaining them at length, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.

67.    The training policies of the City of Fontana were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to performing high risk traffic stops of vehicles suspected of being stolen based only upon unconfirmed CLETS data and using excessive force based only upon same.  The City of Fontana knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would engage in conduct that would deprive persons such as Plaintiff of his rights.  The City of Fontana was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

68.    Defendant City of Fontana's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff by Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10, and the other involved Officers; that is, the City of Fontana's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused his injuries.

69.    FPD Chief William Green, a final policymaker for the City of Fontana, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their

COMPLAINT FOR DAMAGES                    -16-

unlawful acts and omissions.  Upon information and belief, the City took no action in response to Plaintiff's allegations and none of the involved Officers have been disciplined.

**FOURTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983**

**Fourth and Fourteenth Amendments: Failure to Intervene**

**(By Plaintiff Against All Defendants)**

70.     Mr. Corona realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

71.     All of the acts of Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 were done under color of state law.

72.     The acts of the Officer Defendants deprived Plaintiff of rights, privileges, and immunities secured by the Constitution of the United States, including but not limited to their rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment by, among other things, failing to intervene in the unlawful actions of other Officers.  These unlawful actions include the unreasonable traffic stop of Plaintiff, the unlawful *de facto* arrest of Plaintiff, the unlawful search of Mr. Corona's truck and the affixed U-Haul trailer, and the use of excessive force against Plaintiff, including Defendants drawing their gun and pointing them at Plaintiff, forcing Plaintiff to kneel in the middle of the street, applying handcuffs so tightly that Plaintiff's hands started to go numb, and detaining Plaintiff for an extended period of time.

73.     At all relevant times, the Officer Defendants were present and had a realistic opportunity to intervene and prevent the unlawful traffic stop, *de facto* arrest, search, and excessive force by their fellow Officers against Plaintiff, but neglected to do so.

74.     As a direct and proximate result of the aforementioned acts and omissions

of the Officer Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

75.     In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for Plaintiff's constitutional rights.  The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

76.     The Officer Defendants and any other involved officers acted pursuant to expressly adopted official policies or longstanding practices or customs of the City of Fontana.  These include policies and longstanding practices and/or customs requiring and/or permitting officers to carry out "high risk" stops, including but not limited to utilizing large numbers of police cars and officers, drawing their weapons and pointing firearms at people, forcing people to kneel, handcuffing them, detaining them at length, and searching their vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to Ninth Circuit law.  These official policies and longstanding practices and/or customs also include failure to intervene in said activities.

77.     The training policies of the City of Fontana were not adequate to train, supervise, and control its Officers to handle the usual and recurring situations with which they must deal, including but not limited to failing to intervene to stop unlawful seizures, unlawful searches, and the use of excessive force, including carrying out "high risk" stops utilizing large numbers of police cars and officers, drawing and pointing firearms at people, forcing people to kneel, detaining them at length, and searching their vehicles, all in situations that are not high risk and based only upon reasonable suspicion of property crimes such as suspected stolen vehicles and without regard to the Ninth Circuit law.  The City of Fontana knew that its failure to adequately train its Officers for such situations made it highly predictable that its Officers would fail to

COMPLAINT FOR DAMAGES                    -18-

intervene to stop constitutional violations by their fellow Officers that deprive persons such as Plaintiff of their rights. The City of Fontana was thus deliberately indifferent to the obvious consequences of its failure to train its Officers adequately.

78.    Defendant City of Fontana's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiff by Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10, and the other involved Officers; that is, the City of Fontana's official policies and/or longstanding practices or customs are so closely related to the deprivation of Plaintiff's rights as to be the moving force that caused their injuries.

79.    FPD Chief William Green, a final policymaker for the City of Fontana, ratified the actions and omissions of the Defendant Officers and the other involved officers in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions, including their failure to intervene to stop the unlawful acts of their fellow officers. Upon information and belief, the City took no action in response to Plaintiff's allegations and none of the involved Officers have been disciplined.

**FIFTH CLAIM FOR RELIEF**

**BANE ACT, CIVIL CODE § 52.1**

**(By Plaintiff Against All Defendants)**

80.    Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

81.    Article I, § 13 of the California Constitution and the Fourth Amendment to the United States Constitution, incorporated and made applicable to the states and their local governments by the Fourteenth Amendment, guarantee the right of persons to be free from unlawful false arrests, unlawful searches, and excessive force on the part of law enforcement officers. The Officer Defendants and the other involved Officers, by engaging in the wrongful acts and failures to act alleged herein, intentionally and

deliberately denied each of these rights to Plaintiff by threats, intimidation, or coercion, to prevent Plaintiff from exercising his rights to be free of false arrest, unlawful searches, and excessive force, thus giving Plaintiff claims for damages pursuant to California Civil Code § 52.1. Specifically, the Officer Defendants and other involved Officers unlawfully (1) stopped Plaintiff based only upon unverified information from CLETS indicating that the U-Haul trailer affixed to Plaintiff's truck might be stolen, (2) performed a *de facto* arrest of Plaintiff, (3) searched Plaintiff's truck and the affixed U-Haul trailer without Plaintiff's consent, (4) used excessive force against Plaintiff, including pointing their guns at Plaintiff, forcing Plaintiff to kneel in the middle of the street, and applying handcuffs so tightly that they made Plaintiff's hands go numb, and (5) subjected Plaintiff to a lengthy detention in a police car where he suffered a panic attack. The Officer Defendants intended by their actions to deprive Plaintiff of his enjoyment of the interests protected by the right to be free of such conduct.

82.     As a direct and proximate result of the aforementioned acts and omissions of the Officer Defendants, Plaintiff sustained and incurred damages including pain, suffering, and emotional injury.

83.     Each of the Officer Defendants was both personally involved and aided and abetted in the violation of Plaintiff's constitutional rights. Each Officer knew that the other Officers were committing unlawful actions against Plaintiff as they planned to and did unlawfully arrest Plaintiff, search Plaintiff's truck and the affixed U-Haul trailer, use excessive force against Plaintiff, and detain Plaintiff. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiff.

84.     The City of Fontana is vicariously liable for its Officers' misconduct.

85.     In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual

capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

86.     As the direct and legal result of Defendants' conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to those set forth above, and is entitled to statutory damages under Cal. Civ. Code § 52, including damages up to three times Plaintiff's actual damages but no less than $4,000 for every offense of California Civil Code § 51 *et seq.*, as well as compensatory and punitive damages and attorneys' fees.

**SIXTH CLAIM FOR RELIEF**

**ASSAULT**

**(By Plaintiff Against All Defendants)**

87.     Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

88.     Defendants drew their weapons and aimed them at Plaintiff's person in a threatening manner.

89.     Plaintiff reasonably believed that Defendants would shoot him.

90.     Plaintiff did not consent to Defendants' conduct.

91.     As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiff has suffered and continues to suffer emotional injury.

92.     Upon information and belief, each of the Officer Defendants was either personally involved and/or aided and abetted in the violation of Plaintiff's constitutional rights.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiff as they planned to and did unlawfully aim their weapons at Plaintiff. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiff.

93.     The City of Fontana is vicariously liable for the actions of the Officer Defendants.

94.     In doing the foregoing wrongful acts, Defendants, and each of them, acted

with conscious disregard of Plaintiff's rights. Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**SEVENTH CLAIM FOR RELIEF**

**BATTERY BY PEACE OFFICER**

**(By Plaintiff Against All Officer Defendants)**

95.    Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

96.    Defendant Officers intentionally touched Plaintiff including forcefully handcuffing him, forcing him to kneel, and putting the handcuffs on so tightly that Plaintiff's hands went numb.

97.    Defendants Officers used unreasonable force while intentionally touching Plaintiff.

98.    Plaintiff did not consent to the Officers' uses of force.

99.    Plaintiff was harmed by the Officers' uses of force, which has caused him to suffer injuries including pain, suffering, and emotional injuries.

100.    Each of the Officer Defendants was either personally involved and/or aided and abetted in the violation of Plaintiff's constitutional rights. Each Officer knew that the other Officers were committing unlawful actions against Plaintiff as they planned to and did use excessive force against Plaintiff. Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiff.

101.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiff sustained pain, suffering, and emotional injury.

102.    The City of Fontana is vicariously liable for the actions of the Officer Defendants.

COMPLAINT FOR DAMAGES                    -22-

103.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## EIGHTH CLAIM FOR RELIEF
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (By Plaintiff Against All Defendants)

104.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

105.   Defendants' actions performing a "high risk" stop of Plaintiff, drawing their guns, pointing their weapons at Plaintiff, forcing Plaintiff to kneel, violently handcuffing Plaintiff, detaining Plaintiff, and searching Plaintiff's truck and affixed U-Haul trailer, was outrageous.  This conduct was performed with reckless disregard to the effect that these actions and omissions would have upon Plaintiff, including emotional distress.

106.   As a direct and proximate result of the aforementioned acts or omissions of Defendants, Plaintiff suffered injuries including pain, suffering, and severe emotional injury.

107.   The City of Fontana is vicariously liable for the actions of the Officer Defendants.

108.   In doing the foregoing wrongful acts, Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## NINTH CLAIM FOR RELIEF

## NEGLIGENCE

### (By Plaintiff Against All Defendants)

109.   Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

110.   The conduct of the Officer Defendants as set forth herein, was tortious in that Defendants breached their duty of care to Plaintiff, an unarmed man besieged by at least seven police officers, when the Officer Defendants performed a "high risk" stop, searched the U-Haul truck, used excessive force against Plaintiff including by pointing guns at him and violently handcuffing him, and detained him a police car where he suffered a panic attack.

111.   Defendants City and Green failed to appropriately hire, supervise, train, review, and ensure that their Officers abided by the standard of care, failed to enact appropriate standards and procedures that would have prevented such harms to Plaintiff, including failing to train FPD Officers (1) not to use high risk traffic stops based only on suspicion of a stolen vehicle arising from unverified CLETS data, and (2) not to use excessive force or perform *de facto arrests* or vehicular searches in situations where such actions are not justified.

112.   Each of the Officer Defendants was either personally involved and/or aided and abetted in the breach of a duty to care toward Plaintiff.  Each Officer knew that the other Officers were committing unlawful actions against Plaintiff as they planned to and did unlawfully arrest Plaintiff, search the U-Haul, use excessive force against Plaintiff, and detain Plaintiff in a police car.  Each Officer gave substantial assistance or encouragement to the other Officers and each Officer's conduct was a substantial fact in causing harm to Plaintiff.

113.   As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiff sustained and incurred physical and emotional damages.

114.   The City of Fontana is vicariously liable for the actions of the Officer

Defendants.

115.    In doing the foregoing wrongful acts, the Officer Defendants, and each of them, acted with conscious disregard of Plaintiff's rights.  Said Defendants' conduct was willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages against each individual Officer Defendant in their individual capacities (but not against the entity Defendant) to punish the wrongful conduct alleged herein and to deter such conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1.    For compensatory, general and special damages against each Defendant, jointly and severally, amounts to be proven at trial;

2.    For punitive and exemplary damages against individually named Defendants Chief of Police Green, Defendant Officer Gregg, Defendant Lieutenant Kraut, and Defendant Officers DOES 1-10 in their individual capacities and in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.    Prejudgment and post-judgment interest;

4.    For costs and suits and reasonable attorneys' fees and costs as authorized by statute or law;

5.    For restitution as the Court deems just and proper;

6.    For injunctive and declaratory relief; and

7.    For such other relief as the Court may deem proper.

/ / /

/ / /

/ / /

COMPLAINT FOR DAMAGES                    -25-

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

Dated: January 7, 2021                    Respectfully Submitted,

                                          HADSELL STORMER RENICK & DAI LLP


                                          By:   /s/ Brian Olney
                                                Dan Stormer
                                                Brian Olney
                                          Attorneys for Plaintiff